UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

VS.  CASE NO. 5:14-cr-41-JA-PRL

JASON WARNICK

## ORDER

Defendant filed a Motion for Compassionate Release. (Doc. 171).[1] To prevail on his motion, Defendant must satisfy two requirements: (1) he must exhaust his administrative remedies and (2) show there are extraordinary and compelling reasons warranting a reduction. If the Court finds that Defendant satisfies these requirements, it may reduce the term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) (18 U.S.C. § 3582(c)(l)(A); U.S.S.G. § 1B1.13), and specifically finding that Defendant is not a danger to the safety of any other person or the community (U.S.S.G. § 1B1.13(2)). Defendant has exhausted his administrative remedies, but because he cannot show extraordinary and compelling reasons for a reduction of his sentence, his motion must be denied. Furthermore, the § 3553 sentencing factors

---

[1] The Government opposes the motion. (Doc. 174). Defendant filed a Supplement. (Doc. 175).

do not weigh in Defendant's favor.

After Defendant pleaded guilty to Count One of the Indictment, conspiracy to distribute cocaine, a Schedule II controlled substance, the amount being five (5) kilograms or more, in violation of Title 21, United States Code, §§ 846, 841(a)(1), and 841(b)(1)(A) (Doc. 79), the Court sentenced him on September 24, 2015 to 262 months of imprisonment followed by 4 years of supervised release. (Docs. 136, 137). On May 4, 2017, the Court reduced Defendant's sentence to 210 months imprisonment pursuant to a Rule 35(b) motion by the Government. (Docs. 163, 167). Defendant is 40 years old with a projected release date of September 27, 2029. (Doc. 174).

## I. LEGAL FRAMEWORK FOR REDUCTION IN SENTENCE

"The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." *United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010). Congress granted the courts limited authority to modify a sentence in 18 U.S.C. § 3582(c):

> **(c) Modification of an imposed term of imprisonment.-**
>
> The court may not modify a term of imprisonment once it has been imposed except that--
> **(1)** in any case--
> A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights

> to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
> **(i)** extraordinary and compelling reasons warrant such a reduction; or
> **(ii)** the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Because Defendant is under 70 years old, he must show extraordinary and compelling reasons to qualify for modification of his sentence under § 3582(c). Factors constituting extraordinary and compelling reasons are outlined in U.S.S.G. 1B1.13, the policy statement underlying 18 U.S.C. §3582. These reasons include Defendant's: (A) medical conditions, (B) age, if over 65 years, and (C) family circumstances. Neither (B) or (C) apply here because Defendant is not over 65 and he does not claim a

3

relevant family circumstance.[2]

Extraordinary medical conditions include (i) any terminal illness, and (ii) any "serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. §1B1.13, cmt. n.1(A). Terminal illness "means a disease or condition with an end-of-life trajectory." 18 U.S.C. § 3582(d)(l). BOP Program Statement 5050.50, at 3(a) provides that consideration for a reduction in sentence can be given to an inmate who has been diagnosed with a terminal, incurable disease and whose life expectancy is eighteen months or less. Consideration is also given if an inmate is "completely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair" or "capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours." *Id.* at 3(b). But even when an extraordinary and compelling reason exists, a district court should only reduce a term of

---

[2] Family circumstance is either (i) the death or incapacitation of the caregiver of the defendant's minor child or minor children or (ii) the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner. U.S.S.G. 1B1.13, Application Note 1.(C). Defendant does not allege either of these conditions.

4

imprisonment if it determines that the defendant is not a danger to the public and the 18 U.S.C. § 3553(a) factors weigh in favor of release. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. §1B1.13.

## II. DISCUSSION

### A. EXHAUSTION OF ADMINSTRATIVE REMEDIES

The first question is whether Defendant exhausted his administrative remedies because the failure to do so is fatal to his request. *United States v. Raia,* 954 F.3d 594, 597 (3d Cir. 2020)("Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance."). As set forth above, Defendant may ask the Court for relief after (1) he has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on his behalf or (2) there has been a lapse of 30 days from the receipt of such a request by the warden of the facility where Defendant is imprisoned. 18 U.S.C. § 3582(c)(1)(A).

Defendant "appealed" the denial of his request for compassionate release to the Warden on December 28, 2020. (Doc. 171 at 24). The Warden denied his "appeal" on January 11, 2021. (Doc. 171 at 23). Defendant then appealed the Warden's denial to the Regional Director on January 25, 2021 (Doc. 171 at 20) which was denied on June 16, 2021. (Doc. 171 at 19). The

5

Regional Director did not respond to Defendant's appeal within thirty days as required by 28 C.F.R. § 542.18. Therefore, Defendant exhausted his administrative remedies.

### B. DEFENDANT FAILS TO PRESENT ANY EXTRAORDINARY AND COMPELLING REASONS

Defendant bears the burden of establishing that release is warranted. *United States v. Heromin*, 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013). Defendant claims he suffers from asthma, allergies, and an irregular heartbeat. (Doc. 171 at 2). Defendant also refers to high IgE levels. (*Id.*).[3] Defendant asserts these medical conditions, along with the threat of Covid-19, and that he is serving a much longer sentence than he would if sentenced today, are all extraordinary and compelling circumstances to warrant compassionate release. (Doc. 171 at 2-3). None of these asserted conditions qualify as extraordinary and compelling circumstances.

As of November 15, 2021, Defendant reported no asthma exacerbation for 15 months. (Doc. 174-1 at 1). Defendant received an Albuterol Inhaler to use as

---

[3] An immunoglobulin test measures the level of IgE, a type of antibody, which are proteins the immune system makes to recognize and get rid of germs. Higher amounts can be a sign that the body overreacts to allergens, which can lead to an allergic reaction. IgE levels can also be high when the body is fighting an infection from a parasite and from some immune system conditions. Nemours Children's Health, *Blood Test: Immunoglobulin E (IgE)*, September 2021.

needed and a Mometasone Furoate Inhaler on at least two occasions to assist with his asthma. (Doc. 174-1 at 3, 23). Defendant's medical records recognize he has allergies to amoxicillin, shrimp and pollen extracts and care plans were discussed with him as well as follow up plans. (Doc. 174-1 at 3-4; 14; 18; 23; Doc. 171 at 11-12; 15). The only references to high IgE levels in the medical records provided were on September 3 and 11, 2019. On September 3, 2019, his IgE levels were discussed (Doc. 171 at 16) and on September 11, 2019, Defendant was "advised about very high IgE levels and need to identify possible allergens for panel tests; verbalized understanding." (Doc. 171 at 15). Concerns over his IgE levels are not discussed elsewhere in the provided medical records. Neither Defendant's asthma nor his allergies are terminal conditions, nor do they affect Defendant's ability to provide self-care. Defendant reported in his PSR that he is allergic to dust, pollen, and cats. (Doc. 115 at 19). The only other medical conditions reported at that time were two herniated discs in his back and a "pulsating" stomach for which he took Tums. (*Id.*).

Defendant was seen for irregular heartbeats by Citrus Cardiology on November 3, 2021. (Doc. 174-1 at 30-31). The assessment indicated tachycardia with a plan for a Holter Monitor. (*Id.*). The plan further indicated if the Holter Monitor was normal, Defendant should follow-up as needed. (*Id.*) Defendant was also advised to make lifestyle changes to avoid caffeine and substitute albuterol. (*Id.*) Defendant advises that he has not yet had the Holter Monitor

test. (Doc. 175 at 1). There is nothing further in Defendant's medical records to indicate that he has a terminal heart condition or that he is prohibited from providing self-care.

The specified categories of the Sentencing Commission's policy statement are serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. "The mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *Raia*, 954 F.3d at 597. And "general concerns about possible exposure to COVID-19 do not meet the criteria for an extraordinary and compelling reason under U.S.S.G. § 1B1.13." *United States v. Smith*, 8:17-cr-412-T-36AAS, 2020 WL 2512883, at *6 (M.D. Fla. May 15, 2020).

Finally, "neither the 1B1.13 commentary nor BOP Program Statement 5050.50 identify post-sentencing developments in case law as an 'extraordinary and compelling reason' warranting a sentence reduction." *United States v. Saldana*, 807 F. App'x 816, 820 (10th Cir. 2020). *See also, United States v. Neubert,* No. 1:07-cr-00166-SEB-KPF, 2020 WL 1285624, at *3 (S.D. Ind. March 17, 2020)( "the disparity between [defendant's] actual sentence and the one he would receive if he committed his crimes today is not an 'extraordinary and compelling circumstance.'"); *United States v. Rucker,* No. 04-20150-JWL, 2020

WL 4365544, at *3 (D. Kansas July 30, 2020)("a disparity based on a change in sentencing law cannot serve as the basis for relief under Section 3582(c)(1)(A)").

Courts are prohibited from granting compassionate release unless "such a reduction is consistent with applicable policy statements issued by" the Commission. 18 U.S.C. § 3582(c)(1)(A). *See Dillon v. United States*, 560 U.S. 817, 821 (2010)(a "reduction must be consistent with applicable policy statements issued by the Sentencing Commission"); *United States v. Colon*, 707 F.3d 1255, 1259-60 (11th Cir. 2013) (3582(c)(2) requires courts to follow policy statements of the Sentencing Commission); *United States v. Nasirun*, No. 8:99-CR-367-T-27TBM, 2020 WL 686030, at *2 (M.D. Fla. Feb. 11, 2020)("any reduction must be consistent with the policy statements of the Sentencing Commission").

Defendant fails to carry his burden of showing extraordinary and compelling circumstances to warrant compassionate release.

### C. THE 18 U.S.C. § 3553(a) FACTORS WEIGH AGAINST GRANTING DEFENDANT RELIEF

If Defendant had presented extraordinary and compelling reasons—which he did not—the Court could grant a sentence reduction after considering the 3553(a) factors. 18 U.S.C. § 3582(c)(1)(A). In an abundance of caution, the

Court has carefully considered the 3553(a) factors and finds that they also weigh against Defendant's request for relief.[4]

I. CONCLUSION

Defendant's Motion for Compassionate Release (Doc. 171) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida, on February 1st, 2022.

JOHN ANTOON II
United States District Judge

Copies furnished to:
United States Attorney
United States Probation Office
Jason Warnick

---

[4] Defendant's criminal career began with a violation of a restricted driver's license and failure to appear for sentencing at age 17. He went on to incur the following convictions: at age 18, possession of cannabis with intent to sell; at 19, sale and possession of cocaine; age 22, possession of cocaine, resist or obstruct officer without violence, and giving false name or identity to law enforcement; and at age 23, resist or obstruct officer without violence, trafficking in cocaine, fleeing or attempting to elude, resist officer without violence, leaving the scene of an accident and possession of paraphernalia. (Doc. 115 at 12-15). He was released from probation on February 4, 2008. (Doc. 115 at 15). Defendant began his criminal activities in this case in 2008 (age 26). (Doc. 79 at 18).